UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CHERYL WEST,                                No. 3:13-cv-01567-HU

        Plaintiff,                          **FINDINGS AND**
                                            **RECOMMENDATION**
        v.

BROOKDALE SENIOR LIVING
COMMUNITIES, INC., a Delaware
Corporation, d/b/a WYNWOOD OF
FOREST GROVE,

        Defendant.
_____

Scott N. Hunt
Kirsten Rush
Busse & Hunt
621 SW Morrison Street, Suite 521
Portland, OR 97205
Telephone: (503) 248-0504
Facsimile: (503) 248-2131

        Attorneys for Plaintiff

Leah C. Lively
Sean M. Driscoll
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
222 SW Columbia Street, Suite 1500
Portland, OR 97201
Telephone: (503) 552-2140
Facsimile: (503) 224-4518

        Attorneys for Defendant

Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiff Cherly West ("Plaintiff") brings this diversity suit against her former employer, Defendant Brookdale Senior Living Communities, Inc. ("Defendant"), alleging violations of Oregon's workers' compensation laws.  Defendant now moves, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, to compel arbitration of Plaintiff's claim(s) and to stay or abate the present action pending completion of arbitration.  For the reasons that follow, Defendant's motion (Docket No. 4) to compel arbitration should be granted and this case should be stayed until arbitration is completed.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff began working for Defendant, a Delaware corporation doing business in Oregon under the name Wynwood of Forest Grove, on February 8, 2007.  (Compl. ¶¶ 2-3; West Decl. ¶ 3.)  On February 27, 2007, approximately nineteen days into her employment, Plaintiff was presented with and signed an Associate Handbook Receipt and Acknowledgment ("the 2007 Handbook Acknowledgment"). (West Decl. ¶ 4; Driscoll Decl. Ex. A at 1.)  The 2007 Handbook Acknowledgment provided, in pertinent part, as follows:

> By signing in the space below, I am indicating that I have received a copy of this Brookdale Associate Handbook and agree to abide by the policies outlined in the Handbook. . . .
>
>           . . . .
>
> I understand this Handbook does not create a contract of employment, express or implied, between Brookdale and me and I should not view it as such, or as a guarantee of employment for any specific duration.  I acknowledge my employment with Brookdale is on an at-will basis. Accordingly, either Brookdale or I can terminate the at-will relationship at any time, with or without cause or prior notice.

Page 2 - FINDINGS AND RECOMMENDATION

. . . .

I understand that if I improperly use or disclose trade secrets or confidential business information, I will be subject to disciplinary action, up to and including termination of employment and legal action, even if I do not actually benefit from the disclosed information.

. . . .

I understand that Brookdale has an Employment Binding Arbitration policy in place should any dispute arise between Brookdale and me, and that I agree to arbitrate the dispute by a final binding arbitration.

(Driscoll Decl. Ex. A at 1.)  A copy of Defendant's 2007 Associate Handbook, or any portion thereof, is not in the record of this case.

Also on February 27, 2007, Plaintiff and a corporate representative of Defendant, Kathy Cogswell, signed Defendant's Employment Binding Arbitration Agreement ("the 2007 Arbitration Agreement").  (Driscoll Decl. Ex. D at 1-4; West Decl. ¶ 2.)  The 2007 Arbitration Agreement provided, in pertinent part, as follows:

In agreeing to submit certain employment disputes for resolution by binding arbitration, you acknowledge that this Agreement is given in exchange for rights to which you are not otherwise entitled—namely, your employment as our associate and the more expeditious resolution of employment disputes.  In exchange for your agreement to submit these disputes to binding arbitration, we likewise agree to the use of arbitration as the exclusive forum for resolving employment disputes covered by this Agreement.

After we sign this Agreement, we both will be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures set forth in this Agreement.  The Binding Arbitration Procedure:

1. As a condition of your employment here, you agree that any controversy or claim arising out of or relating to your employment relationship with us or the termination of that relationship, must be submitted for final and binding resolution by a private and impartial arbitration, to be jointly selected by you and us.

Page 3 - FINDINGS AND RECOMMENDATION

. . . .

d. Binding Arbitration: . . . The arbitration will be conducted under the Employment Dispute Resolution Rules of the American Arbitration Association (AAA) with the additional proviso that the Procedure shall be conducted on a confidential basis. These Rules, incorporated by reference into this Procedure, include (but are not limited to) the procedures for joint selection of an impartial arbitrator and for the hearing of evidence before the arbitrator. . . . A copy of the complete AAA Employment Dispute Resolution Rules may be obtained from the Human Resources Director.

e. Any conflict between the rules and procedures set forth in the AAA rules and those set forth in this Agreement shall be resolved in favor of those in this Agreement.

. . . .

j. The parties agree that the costs of the AAA administrative fees and the arbitrator's fees and expenses, will be paid for us initially, but as provided by statute or decision of the arbitrator.  In other words, all costs could after all is complete be paid by us or you, depending on the outcome.  All other costs and expenses associated with the arbitration, including, without limitation, the party's respective attorneys' fees, shall be borne by the party incurring the expenses, unless provided otherwise by statute or decision of the arbitrator.

. . . .

2. This Agreement sets forth our complete agreement on the subject of . . . arbitration of the covered claims . . . and supercedes any prior or contemporaneous oral or written understanding on these subjects.  Neither you nor we are relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Procedure.

If any provision of this Agreement is invalid or unenforceable, such provision shall be severed and the remainder of this Agreement shall be unaffected thereby but shall continue to be valid and enforceable to the fullest extent permitted by law.

By providing []our signature[s] below, . . . both of us are giving up any constitutional or statutory right we may possess to have covered claims decided in a court of law before a judge or a jury.

Page 4 - FINDINGS AND RECOMMENDATION

(Driscoll Decl. Ex. D at 1-4.)[1]  The type of claims explicitly covered by the 2007 Arbitration Agreement included, but were not limited to, claims for discrimination based on characteristics protected by statute and claims for violation of any state or federal statute.  (Driscoll Ex. D at 1-2.)  Plaintiff does not dispute whether her claim(s) would be covered under the terms of the 2007 Arbitration Agreement.

On July 16, 2009, approximately two and a half years into her employment, Plaintiff signed a second Associate Handbook Receipt and Acknowledgment ("the 2009 Handbook Acknowledgment"). (Driscoll Decl. Ex. B at 1; West Decl. ¶ 5.)  The 2007 Handbook Acknowledgment and 2009 Handbook Acknowledgment are identical in all material respects for purposes of the instant motion.  In certain limited respects, the three pages of Defendant's 2009 Associate Handbook that are on record with the Court conflict with the 2007 Arbitration Agreement.  Perhaps most notably, the 2009 Associate Handbook states: "The parties agree to share equally the AAA administrative fees and the arbitrator's fees and expenses, except as may be otherwise provided by statute or decision of the arbitrator." (Driscoll Decl. Ex. C at 3.)

The 2009 Associate Handbook, however, also states the following in bold typeface: "You will be required to sign a separate Binding Arbitration Agreement in order to remain employed

---

[1] As confirmed by Defendant's counsel during oral argument, the cost-allocation provision is supposed to read "the costs of the AAA administrative fees and the arbitrator's fees and expenses, will be paid for [by] us initially," as other provisions in the 2007 Arbitration Agreement clearly suggest.

Page 5 - FINDINGS AND RECOMMENDATION

at Brookdale.  Your failure or refusal to do so will result in your immediate termination of employment." (Driscoll Decl. Ex. C at 1.) During oral argument on the pending motion, Plaintiff's counsel confirmed that she is not aware of an arbitration agreement entered into by Plaintiff and Defendant in 2009, nor is there a record of such an agreement with the Court.  Thus, at least on this record, the 2007 Arbitration Agreement is the only "separate Binding Arbitration Agreement" signed by Plaintiff (or a corporate representative of Defendant, for that matter) "in order to remain employed."

During her employment, Plaintiff suffered three on-the-job injuries for which she sought a workers' compensation award. (Compl. ¶ 4.)  Plaintiff remained on modified duty after the second of those on-the-job injuries, which took place in May 2011, up until the date of her termination, January 30, 2013.  (Compl. ¶¶ 3-4.)  She then filed the present action against Defendant on August 15, 2013, in Washington County Circuit Court.  (Def.'s Notice of Removal ¶ 1; Lively Decl. Ex. 2 at 1-2.)  Though styled as a single-count complaint, Plaintiff alleges at least two violations of Oregon's workers' compensation laws: (1) injured worker discrimination under ORS 659A.040, and (2) failure to reemploy under ORS 659A.046.  (*See* Compl. ¶¶ 6-7.)  Defendant removed Plaintiff's complaint to federal district court on September 5, 2013.  Defendant's motion to compel arbitration and to stay or abate proceedings followed shortly thereafter.

## II. LEGAL STANDARD

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as

Page 6 - FINDINGS AND RECOMMENDATION

exist at law or in equity for the revocation of any contract." 9
U.S.C. § 2.  The Supreme Court has stated that "arbitration is a
matter of contract," *United Steelworkers of Am. v. Warrior & Gulf
Navigation Co.*, 363 U.S. 574, 582 (1960), and district "courts
[should] place arbitration agreements on equal footing with other
contracts," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002).
Accordingly, arbitration agreements are subject to all defenses to
enforcement that apply to contracts generally.  *See* 9 U.S.C. § 2.
Indeed, "generally applicable contract defenses, such as fraud,
duress, or unconscionability, may be applied to invalidate
arbitration agreements without contravening [federal law]."
*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In order to evaluate the validity of an arbitration agreement,
district courts "should apply ordinary state-law principles that
govern the formation of contracts." *First Options of Chicago, Inc.
v. Kaplan*, 514 U.S. 938, 944 (1995).  Before this Court may stay
the present action and enforce arbitration, it must determine: (1)
whether there is a valid agreement to arbitrate between the
parties; and (2) whether the claims or issues raised are within the
scope of such agreement.  *Progressive Cas. Ins. Co. v. C.A.
Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir.
1993); *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 868
(D. Or. 2002).

In the context of a motion to compel arbitration, the burden
of proof is on the party asserting jurisdiction and contesting
arbitration.  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220,
227 (1987).  If there are "any doubts" concerning the arbitrability
of a party's claims, a court should resolve the dispute in favor of

Page 7 - FINDINGS AND RECOMMENDATION

arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

**III. DISCUSSION**

**A.   Contract Modification**

Noting the differing language used to describe the allocation of the AAA arbitration fees and the arbitrator's fees and expenses, Plaintiff asserts that the 2009 Handbook Acknowledgment she signed, along with the three pages of the 2009 Associate Handbook on record with the Court, in effect modified the 2007 Arbitration Agreement. In relevant part, the 2007 Arbitration Agreement states that "[t]he parties agree that the costs of the AAA arbitration fees and the arbitrator's fees and expenses, will be paid for [by] us initially, but as provided by statute or decision of the arbitrator," meaning "all costs could after all is complete by paid by us or you, depending on the outcome." (Driscoll Decl. Ex. D at 3.)  The 2009 Associate Handbook, by contrast, states that "[t]he parties agree to share equally the AAA administrative fees and the arbitrator's fees and expenses, except as may be otherwise provided by statute or decision of the arbitrator." (Driscoll Decl. Ex. C at 3.)

To be a valid contract modification, Oregon law requires evidence of "mutual assent," whether that assent is expressed through an offer and an acceptance or is manifested by conduct. *Bennett v. Farmers Ins. Co.*, 332 Or. 138, 154 (2001); *see also Homestyle Direct, LLC v. Dep't of Human Servs.*, 354 Or. 253, 262 (2013) ("Mutual assent, historically referred to as the 'meeting of the minds,' may be expressed in words or inferred from the actions of the parties.") (citation omitted).

Page 8 - FINDINGS AND RECOMMENDATION

1    The parties did not manifest the required mutual assent in
2  this case.   Perhaps most significant is the fact that the 2009
3  Associate Handbook states: "You will be required to sign a separate
4  Binding Arbitration Agreement in order to remain employed at
5  Brookdale.   Your failure or refusal to do so will result in your
6  immediate termination of employment." (Driscoll Decl. Ex. C at 1.)
7  Yet, the 2007 Arbitration Agreement is the only "separate Binding
8  Arbitration Agreement" on record with the Court, and Plaintiff's
9  counsel has no knowledge of another "separate Binding Arbitration
10 Agreement."[2]   This evidence, or lack thereof, weighs heavily in
11 favor of concluding——as the Court does——that there was no meeting
12 of the minds, as required for a valid contract modification under
13 Oregon law.

14    Further, the district court's decision in *Stephan v. Brookdale*
15 *Senior Living Communities, Inc.*, No. 12-cv-00989-LTB, 2012 WL
16 4097717 (D. Colo. Sept. 17, 2012), supports this result.   There,
17 similar to here, the plaintiff signed Defendant's 2007 Arbitration
18 Agreement and subsequently attempted to avoid binding arbitration
19 by relying on language used in Defendant's handbooks and
20 accompanying acknowledgments.   *Id.* at *3-4.   In fact, one of the
21 plaintiff's primary contentions was that the 2007 Arbitration
22 Agreement was unenforceable in light of the language employed in
23 the 2009 Associate Handbook.   *Id.* at *4.   The *Stephan* court was not
24 persuaded by the plaintiff's arguments and granted Defendant's
25
26 _____
27    **[2]** The Court reiterates that the 2007 Arbitration Agreement is
   entitled "Employment *Binding Arbitration Agreement*," consistent
   with the language and capitalization used in the 2009 Associate
28 Handbook.

Page 9 - FINDINGS AND RECOMMENDATION

motion to compel arbitration under the FAA, stating, among other things:

> I need not decide whether arbitration must be compelled on the basis of the [2007 and 2009] Handbooks alone (as if the [2007] Arbitration Agreement did not exist) because that question is not before me.  Rather, I must decide whether arbitration must be compelled under the [2007] Arbitration Agreement in light of the Handbooks. I conclude that it must.
>
> I begin with the [2007] Arbitration Agreement.  It is a stand-alone document that sets forth the arbitration procedure; it does not incorporate, depend upon, or otherwise reference the Handbooks or any other document. It was by signing the [2007] Arbitration Agreement that the parties bound themselves to the arbitration procedure.  Indeed, the Handbooks themselves make clear that Plaintiff would receive a 'separate agreement'—the Arbitration Agreement—concerning the arbitration policy and that she would agree to the policy by signing that 'separate agreement.'  It bears repeating that Plaintiff does not dispute that the [2007] Arbitration Agreement, in a vacuum, is a binding contract.  Nor does she dispute that the agreement covers her claims.  I therefore decline to address those issues.  At this point, then, the [2007] Arbitration Agreement is exactly that: an enforceable contract binding the parties to arbitrate Plaintiff's [c]laims pursuant to the terms therein.

*Id.* at *4 (internal citations omitted).

Benefitting from a more developed record, the *Stephan* court went on to make some interesting observations regarding the language employed in Defendant's 2007 and 2009 Associate Handbooks:

> Their very first paragraphs unambiguously explain that they are not contracts; rather they mere 'guide[s]' to Defendant's programs and 'general statement[s] of Defendant's policies and procedures,' including its arbitration procedure.  The acknowledgments of receipt that Plaintiff signed reinforce this.  So while the Handbooks recite much of the arbitration policy's provisions, they nevertheless operated as an appraisal and overview of Defendant's employees of the arbitration policy and procedure for Defendant's employees and did not act as a contract as to that policy.  Plaintiff's supposition that the Handbooks were a binding contract and her conclusion that, as a result, they controlled over the [2007] Arbitration Agreement are thus flawed: The Handbooks were explicitly not contracts, and the

> Arbitration Agreement is a contract separate and apart from the Handbooks which Plaintiff does not dispute covers her [c]laims and is inherently enforceable. And Plaintiff fails to demonstrate how two 'general statements' of Defendant's policies and procedures control over and effectively nullify that contract. Her use of the Handbooks may obfuscate this deficiency but does not cure it.
>
> . . . .
>
> . . . [T]he [2007] Arbitration Agreement is not a policy or procedure; it is a contract, separate and apart from the Handbooks. . . . It [thus] follows from the above that 2009 Handbook's fee provision likewise had no bearing on the [2007] Arbitration Agreement, meaning the latter's provision governs. I therefore need not address Plaintiff's fourth argument because it challenges the fee provision in the 2009 Handbook——not the Arbitration Agreement's fee provision.
>
> Accordingly, I conclude that there is a valid, enforceable arbitration agreement covering Plaintiff's [c]laims. The Handbooks do not change that. Consequently, Plaintiff's claims must be arbitrated pursuant to the FAA and the [2007] Arbitration Agreement.

*Id.* at *5-6 (internal citations and quotation marks omitted).

As discussed further below, this Court similarly concludes that there is a valid enforceable arbitration agreement covering Plaintiff's claims for violation of Oregon's workers' compensation laws, unless the 2007 Arbitration Agreement is unconscionable. Consistent with *Stephan* and the 2009 Associate Handbook's requirement that employees "sign a separate Binding Arbitration Agreement," the Court declines to consider arguments predicated on the 2009 Associate Handbook's description of Defendant's arbitration procedure. The terms set forth in the 2007 Arbitration Agreement control here.

**B.    Unconscionability**

Plaintiff signed the 2007 Arbitration Agreement approximately nineteen days into her employment.    The Court notes that Oregon

Page 11 - FINDINGS AND RECOMMENDATION

courts have consistently held that continued employment is adequate consideration for a current at-will employee signing an arbitration agreement. *See Gray v. Rent-A-Ctr. W., Inc.*, No. CV 06-1058-HU, 2007 WL 283035, at *6 (D. Or. Jan. 24, 2007) (collecting cases and reaching the same conclusion, even though the arbitration agreement was provided five days after the employee was hired).

Plaintiff asserts that the arbitration clause is unconscionable and thus bears the burden of proof as the party asserting unconscionability. *Sprague v. Quality Rests. Nw. Inc.*, 213 Or. App. 521, 525 (2007) (citing *W.L. May Co., Inc. v. Philco-Ford Corp.*, 273 Or. 701, 707 (1975)). "Under Oregon law, unconscionability is determined based on the facts as they existed at the time the contract was formed." *Best v. U.S. Nat'l Bank of Or.*, 303 Or. 557, 560 (1987).

Unconscionability has both a procedural and substantive component under Oregon law. *Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 566 (2007). Generally speaking, procedural unconscionability refers to the conditions of contract formation and focuses primarily on oppression and surprise. *Id.* Oppression is properly characterized as inequality of bargaining power which results in no real negotiation and an absence of meaningful choice, while surprise involves the extent to which allegedly agreed-upon terms are hidden in a tedious and lengthy form drafted by the party seeking to enforce the terms. *Id.*

Substantive unconscionability, on the other hand, pays particular attention to the one-sided nature of the substantive terms, as opposed to the circumstances of formation. *Id.* at 567. Whether the procedural and/or the substantive component must be met

Page 12 - FINDINGS AND RECOMMENDATION

to find an agreement unconscionable varies by jurisdiction. *Id.*
Oregon has not adopted a formal template, but the Oregon Court of
Appeals has described the analysis as follows:

> The primary focus . . . appears to be relatively clear:
> substantial disparity in bargaining power, combined with
> terms that are unreasonably favorable to the party with
> greater power may result in a contract or contractual
> provision being unconscionable. Unconscionability may
> involve deception, compulsion, or lack genuine consent,
> although usually not to the extent that would justify
> rescission under the principles applicable to that
> remedy. The substantive fairness of the challenged terms
> is always an essential issue.

*Id.* (quoting *Carey v. Lincoln Loan Co.*, 203 Or. App. 399, 422–23
(2005)). Thus, while the procedural and substantive components are
both relevant, only the substantive component is absolutely
necessary. *Id.*

**1.  Procedural Unconscionability**

Plaintiff argues that the 2007 Arbitration Agreement is
oppressive because it was signed as a condition of employment,
without any opportunity for negotiation. Judge Acosta's decision
in *King v. Town & Country Chrysler, Inc.*, Civ. No. 10-1237-AC, 2011
WL 1059108 (D. Or. Mar. 21, 2011), is instructive on the issue of
oppression. There, as here, the employee was presented with an
arbitration agreement as a condition of his employment and did not
receive an opportunity for negotiation. *Id.* at *3. Judge Acosta
determined that the so-called oppression prong was satisfied,
stating:

> As courts have widely noted, a contract signed by an
> employee as a condition of employment is, by its nature,
> a contract of adhesion. The arbitration agreement signed
> by King qualifies as a contract of adhesion. As King
> asserts and Town and Country does not dispute, it was
> presented as a condition of his employment, and the
> circumstances of its presentation did not include an

Page 13 - FINDINGS AND RECOMMENDATION

1    opportunity for negotiation or meaningful choice.  The
2    'oppression' prong is therefore satisfied.

3  *Id.*  Consistent with Judge Acosta's analysis in *King*, the Court
4  concludes that the oppression prong is satisfied in this case.

5       The element of surprise, however, is not implicated by the 2007
6  Arbitration Agreement.  "A party is presumed to be familiar with the
7  contents of any document that bears the person's signature."
8  *Motsinger v. Lithia Rose-FT, Inc.*, 211 Or. App. 610, 616-17 (2007).
9  Plaintiff signed the 2007 Arbitration Agreement and therefore is
10  presumed to be familiar with its contents.  The 2007 Arbitration
11  Agreement is entitled "Employment Binding Arbitration Agreement."
12  This is set off in bold typeface.  The typeface of the four-page
13  agreement, which employs lay terminology throughout, appears to be
14  standard size twelve pitch font and states in very nontechnical
15  language that, "you agree that any controversy or claim arising out
16  of or relating to your employment relationship with us or
17  termination of that relationship, must be submitted for final and
18  binding resolution by a private and impartial arbitrator, to be
19  jointly selected by you and us."  (Driscoll Decl. Ex. D at 1.)

20       Moreover, almost directly above the Plaintiff's signature, the
21  2007 Arbitration Agreement also states: "We both understand that by
22  agreeing to the terms in this Procedure, both of us are giving up
23  any constitutional or statutory right we may possess to have covered
24  claims decided in a court of law before a judge or a jury."
25  (Driscoll Decl. Ex. D at 4.)  From this Court's perspective, the
26  2007 Arbitration Agreement is conspicuous and lacks any element of
27  surprise.  Plaintiff's argument concerning ORS 36.620(5) does not
28  detract from that determination.

Page 14 - FINDINGS AND RECOMMENDATION

ORS 36.620(5) provides, in relevant part, that:

A written arbitration agreement entered into between an employer and employee and otherwise valid under subsection (1) of this section is voidable and may not be enforced by a court unless:

(a) At least 72 hours before the first day of the employee's employment, the employee has received notice in a written employment offer from the employer that an arbitration agreement is required as a condition of employment, and the employee has been provided with the required arbitration agreement that meets the requirements of, and includes the acknowledgment set forth in, subsection (6) of this section; or

(b) The arbitration agreement is entered into upon a subsequent bona fide advancement of the employee by the employer.

OR. REV. STAT. § 36.620(5). Plaintiff contends that the element of surprise is met because she was not provided with sufficient notice that an arbitration agreement was required as a condition of her employment. As Plaintiff goes on to explain, "[w]hile ORS 36.620(5) was enacted after [she] signed the [2007 Arbitration] Agreement, and thus its making was not *de jure* illegal at the time, the later enactment of that statute is a pronouncement of public policy on the subject [of surprise] and therefore relevant to this Court's analysis." (Pl.'s Opp'n at 8.)

Even if, for the sake of argument, ORS 36.620(5) had been enacted prior to Plaintiff signing the 2007 Arbitration Agreement, at least one judge in this district has determined that ORS 36.620(5) is preempted by the FAA. *See Bettencourt v. Brookdale Senior Living Communities, Inc.*, No. 09-CV-1200-BR, 2010 WL 274331, at *7 (D. Or. Jan. 14, 2010) (holding that the FAA preempts ORS 36.620(5) and thus ORS 36.620(5) is not a valid basis for basis for concluding that an arbitration agreement is unenforceable). Plaintiff offers no reason for departing from Judge Brown's decision

Page 15 - FINDINGS AND RECOMMENDATION

1    in *Bettencourt*, which it appears concerned an identical version of

2    Defendant's 2007 Arbitration Agreement, and the Court declines to

3    do so.

4         In short, while the 2007 Arbitration Agreement meets the

5    standard for procedural unconscionability in that it was signed

6    without meaningful negotiation or choice, that alone is an

7    insufficient basis for upon which to declare the 2007 Arbitration

8    Agreement void as unconscionable.

9         **2.   Substantive Unconscionability**

10        Plaintiff argues that the 2007 Arbitration Agreement is

11   substantively unconscionable because it lacks mutuality and because

12   it subjects Plaintiff to unreasonable costs she would not face in

13   a judicial forum.   The Court turns first to Plaintiff's argument

14   regarding the costs of arbitration.   The 2007 Arbitration Agreement

15   includes the following cost-allocation provision:

16        The parties agree that the costs of the AAA
         administrative fees and the arbitrator's fees and
17        expenses, will be paid for us initially, but as provided
         by statute or decision of the arbitrator.   In other
18        words, all costs could after all is complete be paid by
         us or you, depending on the outcome.   All other costs and
19        expenses associated with the arbitration, including,
         without limitation, the party's respective attorneys'
20        fees, shall be borne by the party incurring the expense,
         unless provided otherwise by statute or decision of the
21        arbitrator.

22   (Driscoll Ex. D at 3.)

23        "An arbitration agreement is unenforceable under the FAA if it

24   denies the litigant the opportunity to vindicate his or her rights

25   in the arbitral forum."   *Vasquez–Lopez*, 210 Or. App. at 573

26   (citation omitted).   "Denial of access to an arbitral forum occurs

27   when the cost of arbitration is large in absolute terms, but also,

28   comparatively, when that cost is significantly larger than the cost

Page 16 – FINDINGS AND RECOMMENDATION

of a trial." *Id.* at 574.   "[T]he party who asserts an arbitration clause is invalid on the ground that a cost-sharing provision renders the arbitration clause unconscionable bears the burden of showing the likelihood of incurring such costs." *Bettencourt*, 2010 WL 274331, at *11.

*Bettencourt* is once again instructive because Judge Brown addressed the 2007 Arbitration Agreement's cost-allocation provision in that case, and she concluded that it was not unconscionable:

> [T]he Agreement does not identify who will absolutely bear the costs of the arbitration.  The Agreement leaves that determination to the arbitrator based on the outcome of the arbitration. . . . [T]he mere risk that a party may bear the costs of arbitration is not sufficient to render an arbitration agreement substantively unconscionable. . . . Here the Court cannot determine whether Plaintiff would actually bear any costs beyond the initial costs under the Agreement.  Thus, if the Court found the cost-allocation provision to be unconscionable on this ground, the Court would be invalidating the Agreement on the basis of mere speculation.

> . . . .

> The Court acknowledges the cost-allocation provision in the Agreement is poorly written.  Although the initial clause provides AAA administrative fees and the arbitrator's fees and expenses, will be paid for us initially, that clause does not expressly identify Plaintiff as the party responsible for paying such fees and expenses.  In fact, the Agreement indicates twice that the costs associated with the arbitration are to be allocated as provided by statute or the decision of the arbitrator.

> Both parties refer to the [AAA] . . . rules for employer-promulgated arbitration agreements, which are incorporated by reference into the arbitration Procedure. The AAA rules require a filing fee of $175 for an employee filing a claim.  Under the AAA rules, that cost would be borne by Plaintiff.  The filing fee for the employer is $925 and, according to the rules, is payable in full by the employer, unless the plan provides that the employer pay more.  Moreover, the AAA rules require the employer to pay the $325 per-day fee for hearings before the arbitrator.  The rules also provide all expenses of the arbitrator, including required travel and

Page 17 - FINDINGS AND RECOMMENDATION

other expenses, and any AAA expenses shall be borne by the employer. These cost-allocation rules are consistent with Plaintiff's argument in her memorandum that the AAA recognizes that costs can invalidate employment arbitration agreements, so it normally caps the filing fee for the employee . . . . The AAA rules are also consistent with Defendant's statement in its Reply that Plaintiff is responsible for her filing fee under the Agreement and Defendant is responsible for its filing fee together with all other costs, expenses, and fees determined by the AAA rules, applicable statutes, and the arbitrator.

The Agreement further provides: Any conflict between the rules and procedures set forth in the AAA rules and those set forth in this Agreement shall be resolved in favor of those in this Agreement. Plaintiff contends the Agreement overrides the AAA rules and assigns AAA administrative fees and the arbitrator's fees and expenses to Plaintiff. Considering the Agreement as a whole and in light of its incorporation of AAA rules, however, the Court concludes there is not a conflict between the Agreement and AAA rules as to Plaintiff's payment of fees and expenses. The Agreement only requires Plaintiff to pay her filing fee which is less than the fee for filing an action in federal court ($350 in this district) and for Multnomah County Circuit Court where Plaintiff originally filed this action ($189 at that time). Defendant must pay all other initial fees as required by the AAA rules. Any remaining fees, costs, and expenses will be determined by AAA rules, applicable statutes, and the decision of the arbitrator in accordance with the Agreement.

Accordingly, the Court concludes on this record that Plaintiff has not shown the cost-allocation provision of the Agreement conflicts with AAA rules by requiring Plaintiff initially to pay more than her filing fee. The cost-allocation provision, therefore, is not substantively unconscionable.

*Id.* at *12-13 (internal quotation marks, citations, footnote, brackets and ellipses omitted).

Plaintiff's numbers are slightly different, but the result should be the same as *Bettencourt*. Plaintiff would bear the burden of paying a non-refundable filing fee of $200 (as opposed to $400 for filing in federal district court or $505 for filing an action seeking between $50,000 and $1,000,000 in Washington County Circuit

Page 18 - FINDINGS AND RECOMMENDATION

Court), while Defendant would bear the burden of paying a non-refundable filing fee of $1,350 or more. (Rush Decl. Ex. A at 1; Def.'s Reply at 13.) The AAA rules would also require Defendant to pay at least a $325 per day fee for hearings before a single arbitrator, in addition to the other miscellaneous expenses described above by Judge Brown. As in *Bettencourt*, the Court concludes that the 2007 Arbitration Agreement's cost-allocation provision is not substantively unconscionable on this ground.

Plaintiff next argues that the 2007 Arbitration Agreement effectively overrides the AAA rules and assigns AAA administrative fees and the arbitrator's fees and expenses to Plaintiff. Among other things, the 2007 Arbitration Agreement states: (1) the AAA administrative fees and the arbitrator's fees and expenses "could after all is complete be paid by us or you, depending on the outcome," and (2) "[a]ny conflict between the rules and procedures set forth in the AAA rules and those set forth in this Agreement shall be resolved in favor of those in the Agreement." (Driscoll Decl. Ex. D at 2-3.)

The AAA rules, on the other hand, state: (1) "[a]rbitrator compensation, expenses as defined . . . below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous," and (2) "Expenses: All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer." (Rush Decl. Ex. A at 1-2.)

Page 19 - FINDINGS AND RECOMMENDATION

1    In the Court's view, Plaintiff's argument presupposes that a
2  conflict exists between the 2007 Arbitration Agreement and the AAA
3  rules.  There does not appear to be any conflict, however, between
4  the 2007 Arbitration Agreement and the AAA rules regarding the
5  potential reallocation of the AAA administrative fees and the
6  arbitrator's fees and expenses.  Indeed, under the AAA rules, the
7  AAA administrative fees and the arbitrator's fees and expenses would
8  only be subject to reallocation in the event the arbitrator
9  determined that Plaintiff's claim(s) was filed "for purposes of
10 harassment or [wa]s patently frivolous."  The 2007 Arbitration
11 Agreement accurately reflects this reality insofar as it states that
12 the AAA administrative fees and the arbitrator's fees and expenses
13 "could after all is complete be paid by" Plaintiff.

14    While reallocation by the arbitrator is exceedingly unlikely,
15 the exception under the AAA rules bears some resemblance to the
16 grounds for imposing a Rule 11 sanction in federal district court.
17 *See Collins v. Cheney*, No. 07-cv-0725, 2007 WL 4300025, at *3
18 (W.D.N.Y. Dec. 3, 2007) ("In the face of the plaintiff's continuing
19 propensity for filing frivolous and obviously baseless actions in
20 this Court, it becomes necessary for the Court to impose appropriate
21 sanctions pursuant to Rule 11 and the Court's inherent authority to
22 'fashion an appropriate sanction for conduct which abuses the
23 judicial process.'") (citation omitted).

24    It's certainly possible that, in some or most instances,
25 reallocation under the AAA rules would result in a greater financial
26 burden to the employee bringing the claim than a Rule 11 sanction.
27 Setting aside the fact that good reasons exist for deterring
28 plaintiffs from bringing frivolous, baseless and/or harassing claims

Page 20 – FINDINGS AND RECOMMENDATION

1  in arbitration and judicial proceedings, it is settled law that
2  Oregon courts will not invalidate an arbitration clause "on the
3  basis of mere speculation" or the "possibility" that the plaintiff
4  could potentially bear some undetermined fees and expenses dependent
5  on the outcome of the arbitration. *See Bettencourt*, 2010 WL 274331,
6  at *11-12.

7       And in any event, Defendant's counsel conceded during oral
8  argument that he had no objection to the Court interpreting the 2007
9  Arbitration Agreement "as prohibiting any fee sharing of the
10 arbitrators, and . . . to the extent the plaintiff faces a fee
11 sharing situation [with respect to] the arbitrators, she can come
12 back to [federal] court." (Mot. Compel Arbitration Hr'g Tr. 54,
13 Dec. 10, 2013.) As reflected in the Court's recommendation below,
14 Defendant has requested that this action should be stayed in order
15 to efficiently facilitate the entry of a judgment post-arbitration,
16 and Plaintiff did not oppose such a request. Staying the action
17 will also allow Plaintiff the opportunity to easily revisit the
18 issue of unconscionability in the event Defendant attempts to have
19 the 2007 Arbitration Agreement applied in a manner inconsistent with
20 its representations to the Court.

21      Lastly, Plaintiff argues that the 2007 Arbitration Agreement
22 lacks mutuality of obligation "because the only claims realistically
23 affected by the agreement to arbitrate are claims that Plaintiff
24 would bring against Defendant." (Pl.'s Opp'n at 17.) Essentially,
25 Plaintiff takes issue with the fact that the 2007 Arbitration
26 Agreement does not cover claims by Defendant "for injunctive or
27 other equitable relief, including without limitation claims for
28 unfair competition and the use or unauthorized disclosure of trade

Page 21 - FINDINGS AND RECOMMENDATION

1  secrets or confidential information, for which [it] may seek and
2  obtain relief from a court of competent jurisdiction." (Driscoll
3  Decl. Ex. D at 2.)  This provision of the 2007 Arbitration Agreement
4  regarding claims for injunctive relief are prefaced with the
5  language "[a] claim by you or us," meaning claims for injunctive
6  relief brought by Plaintiff or Defendant are excluded from binding
7  arbitration.  (Driscoll Decl. Ex. D at 2.)

8      To quote the Oregon Court of Appeals, "the doctrine of
9  unconscionability does not relieve parties from all unfavorable
10 terms that result from the parties' respective bargaining positions;
11 it relieves them from terms that are *unreasonably* favorable to the
12 party with greater bargaining power." *Motsinger*, 211 Or. App. at
13 626-27 (emphasis in the original).  Because the 2007 Arbitration
14 Agreement's terms are not *unreasonably* favorable to Defendant, the
15 Court concludes that the 2007 Arbitration is not unconscionable and
16 is enforceable against Plaintiff.  Accordingly, the Court recommends
17 that the present action be stayed pending completion of
18 arbitration.[3]  *Cf. Stephan*, 2012 WL 4097717, at *6 (staying
19 virtually identical action pursuant to § 3 of the FAA).

20 ///
21 ///
22 ///

23

24
       [3]  Neither party has challenged whether staying the proceeding
25 would be an appropriate option here.  *See generally Robinson v.
   Isaacs*, No. 11-CV-1021, 2011 WL 4862420, at *6 (S.D. Cal. Oct. 12,
26 2011) ("[T]here are two prerequisites to granting a stay order
   [under § 3 of the FAA]: (1) the issue is referable to arbitration
27 under an agreement in writing for such arbitration; and (2) the
   applicant for the stay is not in default in proceeding with such
28 arbitration.").

Page 22 - FINDINGS AND RECOMMENDATION

**IV. CONCLUSION**

For the reasons stated, Defendant's motion (Docket No. 4) to compel arbitration should be granted and this case should be stayed pending its completion.

**V. SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **May 12, 2014**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **May 29, 2014**. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  22nd  day of April, 2014.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge

Page 23 - FINDINGS AND RECOMMENDATION